**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Keith NEWMAN, Defendant-Appellant.**

No. 87–3116.

United States Court of Appeals, Fifth Circuit.

June 27, 1988.

Rehearing Denied Aug. 15, 1988.

George R. Simno, III, (court-appointed), Keith Newman, New Orleans, La., for defendant-appellant.

Robert Boitmann, Asst. U.S. Atty., John P. Volz, U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before CLARK, Chief Judge, GOLDBERG and GARWOOD, Circuit Judges.

CLARK, Chief Judge:

Keith Newman appeals his conviction for conspiracy to distribute and distribution of cocaine. Finding no Jencks Act or Brady violations, that evidence of Newman's prior convictions was properly admitted and that the district court was within its discretion in refusing to admit the testimony of Newman's expert psychiatric witness, we affirm.

I.

In May 1986, a federal grand jury returned a four count indictment charging Keith Newman, his wife Andrea Newman and their housekeeper, Paula Trim, with conspiracy to distribute cocaine and distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1981). Trim pled guilty to a one count superceding informa-

tion. Andrea and Keith Newman were tried.

At trial, the government presented evidence that the Drug Enforcement Agency (DEA) received a confidential tip from Sherry Christopher, an employee of Mr. Newman's, that the Newmans were trafficking cocaine. Undercover agent Larry Holifield investigated the tip and on three occasions purchased cocaine from Keith Newman. Newman asserted an entrapment defense alleging that his business partners had set him up to deal with the DEA in order to take his business from him. Neither Keith nor Andrea Newman testified in their own defense.

The jury returned verdicts of guilty against Keith Newman, but could not reach a verdict in Andrea Newman's case.

Keith Newman appeals alleging four grounds for reversal. We affirm.

## II.

### A) *Jencks Act*

Newman alleges that the government violated the Jencks Act by failing to turn over the pretrial statement of government witness, Paula Trim. Trim's statement was on a DEA 6 form investigative report which DEA agent Holifield had filled out on Trim after her post-arrest interview. Holifield took notes during his interview with Trim and later incorporated them into the DEA 6 report.

The Jencks Act provides that in a criminal prosecution brought by the United States, the court, upon motion by the defendant, shall:

"order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."

18 U.S.C. § 3500(b) (1985).

"Statement" is defined as:

"(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury."

18 U.S.C. § 3500(e).

The government first contends that it was not obligated to produce the report because Newman didn't move to secure it after Trim's direct examination as required by § 3500(b). The government further claims that Newman has waived appellate review of the issue by his failure to make a contemporaneous objection. *United States v. Petito*, 671 F.2d 68, 73 (2d Cir.1982); *Wilson v. United States*, 554 F.2d 893, 894 (8th Cir.1977), *cert. denied*, 434 U.S. 849, 98 S.Ct. 158, 54 L.Ed.2d 117 (1977).

Newman claims that he was under no obligation to move for the report's production because the government had entered a pretrial agreement under Fed.R.Crim.Proc. 16 to turn over all Jencks material 48 hours before trial. He further states that he could not have moved for production of the statement at the close of Trim's testimony because he did not learn of its existence until after trial. He asserts that his request for the statement in his post-trial motion for judgment of acquittal was timely.

■ Newman is correct. Where the government agrees to produce Jencks material before trial, the defendant does not have to move for the material at the close of each witness's testimony. *United States v. McKenzie*, 768 F.2d 602, 609 (5th Cir.1985), *cert. denied*, 474 U.S. 1086, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986); *United States v. Campagnuolo*, 592 F.2d 852, 858 n. 3 (5th Cir.1979). The government protests that it was not required to turn over Trim's statement before trial under its agreement because she was called as a rebuttal witness after the defense rested. This does not lessen the government's obligation to produce the statement. *See*, Fed.R.Crim.Proc. 16(c). An agreement to turn over all Jencks material covers statements

made by witnesses called as part of the government's case in chief as well as statements made by rebuttal witnesses. While the government didn't have to turn over Trim's statement 48 hours before trial since she was a rebuttal witness, it was obligated under its agreement to produce the statement before it put Trim on the stand in rebuttal.

■ The government next argues that Holifield's notes and the DEA 6 report were not Jencks material because they were never adopted or ratified by Trim. We agree. Statements made by a witness and summarized by a third person can be Jencks material but only if the witness has signed or otherwise adopted or approved them. *Campbell v. United States,* 365 U.S. 85, 81 S.Ct. 421, 426, 5 L.Ed.2d 428 (1961); *United States v. Gates,* 557 F.2d 1086, 1089 (5th Cir.1977), *cert. denied,* 434 U.S. 1017, 98 S.Ct. 737, 54 L.Ed.2d 763 (1978). Adoption or approval requires either that the agent read the entire statement to the witness or that the witness read the statement herself. Then, the witness must manifest her assent by either signing or otherwise approving the statement. *See, e.g., Goldberg v. United States,* 425 U.S. 94, 96 S.Ct. 1338, 1350, 47 L.Ed.2d 603 (1976) (Stevens, J., concurring); *United States v. Hogan,* 763 F.2d 697, 704 (5th Cir.1985). Witness statements to a third person are to be distinguishable from substantially verbatim transcriptions made contemporaneously with a witness's oral statement which require no adoption or approval to be Jencks material. 18 U.S.C. § 3500(e)(2) (1985).

■ At a post-trial hearing on Newman's motion for acquittal, Holifield testified that he never read his interview notes to Trim and that Trim never saw or signed the notes. The notes were clearly not adopted within the meaning of the Jencks Act. Newman contends, however, that Trim did adopt Holifield's DEA 6 report by reading a copy of the report given to her by her attorney and later telling Holifield that she did not disagree with the report.

■ Trim's statement to Holifield that she did not disagree with anything in the DEA 6 report does not constitute adoption under the Jencks Act. Cases construing a witness's adoption of an agent's report clearly contemplate an interchange between witness and agent in which the witness either signs or more formally approves the statement. *See, e.g., Goldberg, supra; United States v. Nathan,* 816 F.2d 230, 237 (6th Cir.1987); *United States v. Harris,* 542 F.2d 1283, 1292 (7th Cir.1976), *cert. denied, sub. nom. Clay v. United States,* 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977). This Circuit has discussed the adoption requirement at length in *United States v. Hogan,* 763 F.2d 697 (5th Cir.1985).

Trim's later indication of an agreement with the DEA 6 form supplied by her attorney does not meet the standard of *Goldberg* and *Hogan. Goldberg* and *Hogan* clearly contemplate the equivalent of an interchange between agent and witness during which the witness is fully apprised of the contents of the agent's report and at the end of which she signs or otherwise approves the statement. Such an interchange did not take place between Trim and Holifield. A subsequent ratification can be effective if the witness states that she has fully read the report and the agent has the report with him so that the witness can be sure that the copy she has ratified is the same as the report in the agent's possession. Otherwise, the witness cannot be sure that she will not be impeached with statements she never agreed to. In the usual case, the witness signs or initials both copies of the report at the later meeting. The later meeting between Trim and Holifield met neither of these requirements. Trim never stated that she had read the entire report and Holifield did not have a copy with him for Trim to check against the one she had been shown.

Because Holifield's report was not Jencks material, the government's failure to turn it over could not have prejudiced Newman's substantial rights. *United States v. Rodriguez,* 799 F.2d 649, 652 (11th Cir.1986).

B) *The Brady Violation*

█ Next, Newman contends that the government's failure to disclose Paula Trim's criminal record constituted a denial of due process under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Newman did not object to the government's failure to disclose Trim's record at trial but claims that he objected in his post-trial motion for judgment of acquittal.

The issue was in fact not preserved in Newman's post-trial motion. Hence, we will only reverse if plain error occurred. *United States v. Flitcraft*, 803 F.2d 184, 187 (5th Cir.1986).

The government's failure to disclose the criminal record of a witness constitutes a violation of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The criminal record Newman refers to in this case is Trim's probation worksheet which she filled out before her initial appearance. The worksheet lists two violations: a 1984 misdemeanor arrest for theft/destruction of private property which was dismissed, and a 1978 arrest for shoplifting. Trim's probation officer could find no record of the shoplifting arrest and surmised that Trim must have been questioned by store detectives about shoplifting but not actually arrested.

Because neither of the arrests resulted in a conviction, Newman could not have used them for impeachment purposes under Fed. R.Evid. 609. Fed.R.Evid. 608(b) further prevents Newman from inquiring into these arrests as past bad acts to impeach Trim's credibility. *United States v. Garcia*, 531 F.2d 1303, 1306 (5th Cir.1976), *cert. denied*, 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976); *United States v. Alvarado*, 519 F.2d 1133, 1135 (5th Cir.1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1107, 47 L.Ed.2d 315 (1976). Hence, the government's failure to produce the probation worksheet could not have affected Newman's substantial rights. *Flitcraft*, 803 F.2d at 187.

█ Furthermore, the worksheet was available to Newman before trial as part of the public record of the case. The government is not obligated to furnish a defendant with information he already has or can obtain with reasonable diligence. *United States v. Prior*, 546 F.2d 1254, 1259 (5th Cir.1977).

C) *Newman's Prior Criminal Convictions*

█ Newman next argues that the district court erred by admitting evidence of his five prior, non-drug related convictions. Certified copies of his convictions for theft, theft by deception, two convictions for theft-forgery and felony theft were read to the jury over defense objections at the close of Newman's case. Newman contends that these convictions were not admissible under Fed.R.Evid. 609(a) to impeach him because he never testified. The government contends that they were admissible for impeachment purposes under Fed.Rules Evid. 806 and 609(a). Rule 806 permits the credibility of a hearsay declarant to be attacked by any evidence which would have been admissible for impeachment purposes if the declarant had testified as a witness. Rule 609(a) provides that:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involves dishonesty or false statement, regardless of the punishment.

The government contends that four hearsay statements attributed to Newman permitted the admission of his criminal record for impeachment purposes. The first statement, by Stan Levine, a former employee of Newman's, involves a conversation he had with Newman after Newman's business had started to fail. The statement was:

"One night when I was at a football game ... he (Newman) was extremely depressed and he was sitting with his head bowed down and I asked him what was wrong and he said, you know, he was a little reluctant to discuss it with me. Halftime came and we took a walk around the field and [he] started talking and told me the entire story about how these gentlemen who were in the game with him took all his money from him."

The next statements by Newman's father discuss Newman's condition during a visit with his father shortly before Newman's arrest. This is the colloquy:

DEFENSE COUNSEL: All right. How did you become aware of the fact that he was having problems with the war game business?

FATHER: When we went to his house, the condition and everything he was in, he was so upset and everything.

DEFENSE COUNSEL: What do you mean by that, he was so upset and his condition?

FATHER: Well, they took everything away from him.

PROSECUTOR: Objection, your Honor, hearsay.

COURT: Well, I think he ought to explain what that means, if he knows. Now, you ought not to say anything unless it's of your own knowledge, all right, something that you know to be true.

PROSECUTOR: Yes, sir. Your Honor, I think his answer is just repeating what his son told him, and I would ask the witness not to—

DEFENSE COUNSEL: The witness has been instructed by the Court, and that should be more than sufficient, your Honor.

COURT: Go ahead.

DEFENSE COUNSEL: Sir, you said Keith had lost everything, or was losing everything. What do you mean by that?

FATHER: Well, he was so depressed, the way everything was coming down, that he was losing his business and everything, [they] took everything away from him.

The third statement was a question by defense counsel designed to elicit a hearsay response but to which no hearsay response was given. Defense counsel asked:

"Did Mr. Newman ever advise you that he felt as though Ms. Christopher had lost or was losing her effectiveness in the performance and discharge of her duties ... ?"

In the final series of statements, Newman's attorney questioned a member of the United States Marshal's Service about his association with Newman. The following colloquy ensued:

DEFENSE COUNSEL: Did Mr. Newman at any time represent to you that his life had been threatened?

MARSHAL: On, I think, two occasions.

DEFENSE COUNSEL: All right. Did you undertake any investigation as a result of the information Mr. Newman conveyed to you?

MARSHAL: No, I didn't.

DEFENSE COUNSEL: What did you tell Mr. Newman when he advised you that his life had been threatened? What were his instructions?

MARSHAL: Mr. Newman advised me that he was being threatened by some new business partners that he was—I think it was the Great American Adventure Game business. And they told him that if he—he repeated to me—they said that if he didn't get out of town, they was going to harm his wife and his kids. I then instructed Mr. Newman for him to go to the local police with that information.

DEFENSE COUNSEL: And was that all you did, you told him to do?

MARSHAL: Yes. He tried to get me to do other things, but I refused to do them.

DEFENSE COUNSEL: What did he try to get you to do?

MARSHAL: He tried to convince me that, one, I should either go to one of the individuals' place of business and show him identification and tell him, Hey, lay off, that this man is with the United States Marshal's Service. I advised Mr. Newman I couldn't do that.

Newman's out of court statements constitute hearsay. The core of Newman's entrapment defense was that his business partners had set him up with the DEA to take his business away from him. The first, second and fourth exchanges elicited out of court statements by Newman that were admitted to prove the truth of his business partner's intentions. They are therefore hearsay within the meaning of Fed.R.Evid. 801(c). The third "statement" —a question designed to elicit a hearsay response—does not fall within the Rule. None of the statements fall within the hearsay exceptions listed in Rules 803 and 804. Newman's attorney promised several times to put Newman on the stand. The trial court admitted hearsay by Newman on the understanding that the prosecutor would be able to impeach Newman when he took the stand. However, Newman never testified. Hence, the prosecutor could impeach Newman's credibility as a hearsay declarant under Rule 806 if his prior convictions would be admissible for impeachment purposes under Rule 609. *United States v. Bovain,* 708 F.2d 606, 613–14 (11th Cir. 1983), *cert. denied sub. nom. Brown v. United States,* 464 U.S. 898, 104 S.Ct. 251, 78 L.Ed.2d 238 (1983).

The trial court made no finding on the record that the probative value of Newman's theft convictions outweighed their prejudice. Hence, arguably they were not admissible under Fed.R.Evid. 609(a)(1). We therefore look to see if the convictions could have been properly admitted under Rule 609(a)(2) as crimes involving dishonesty or false statement. The notes to Rule 609(a)(2) state that "crimes involving dishonesty or false statement" are:

> "crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully."

Fed.R.Evid. 609, Notes of Conference Committee, House Conf. Report No. 93–1597, U.S.Code Cong. & Admin.News 1974, pp. 7051, 7098. *See also, United States v. Ashley,* 569 F.2d 975, 978–79 (5th Cir.1978), *cert. denied,* 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1978). Newman's two convictions for theft-forgery and his conviction for theft by deception fall within this definition and were properly admitted.

■ Newman's convictions for theft and felony theft do not clearly fall within the ambit of the comment to the rule. However, even if the decision to admit them was error, such error was harmless. Almost identical convictions arising from the same incident had already been properly admitted. The admission of the two additional theft convictions was cumulative and could not have affected Newman's substantial rights. *See, e.g., United States v. Hutson,* 821 F.2d 1015, 1018 (5th Cir.1987).

Prejudice to Newman was further allayed by the trial court's cautionary instructions:

> The evidence on Mr. Newman's convictions which you have just heard is only to be considered by you as possible impeachment of Mr. Newman's out-of-court statements. You may not consider these past convictions as evidence in any way of Mr. Newman's guilt on the charges presently before you.

Finally, in light of the overwhelming evidence of Newman's guilt, including three hand to hand cocaine sales to a government agent and numerous recorded telephone conversations in which Newman discussed drug sales with the agent, admission of the two convictions, even if erroneous, must be deemed harmless on the record as a whole. *United States v. Watkins,* 741 F.2d 692, 695 (5th Cir.1984).

### D) *Expert Psychiatric Testimony*

Finally, Newman argues that the district court abused its discretion by refusing to admit the testimony of his expert forensic psychologist, Dr. Hannie. Newman filed a pretrial notice under Fed.R.Crim.Pro. 12.-2(b) stating that Hannie would testify in support of Newman's insanity defense. Newman later withdrew the notice of insanity defense and stated that Hannie

would testify that Newman possessed certain characterological defects and developed an intense reaction to perceived situational threats which made him especially susceptible to entrapment. Newman's attorney laid the factual foundation for Hannie's testimony by stating that Hannie had conducted several psychological tests and personal interviews with Newman. Fed.R. Evid. 703.

The government argues that Hannie's testimony is inadmissible under Fed.R. Evid. 704(b) which prohibits an expert from testifying that a defendant did or did not have the mental state or condition constituting an element of the crime. It further argues that Newman was attempting to present a diminished capacity defense which is prohibited by the Insanity Defense Reform Act of 1984, 18 U.S.C. § 17(a) (1985).

 Was the court's refusal to permit the psychologist to testify about the defendant's susceptibility to entrapment error? A defendant is entitled to an instruction on entrapment if he can demonstrate that he was induced by government agents to commit the criminal act and that he harbored no intent to commit the criminal act other than that implanted by the government. *United States v. Henry*, 749 F.2d 203, 207 (5th Cir.1984) (en banc). If the defense proves inducement, the government may rebut with evidence that the defendant was predisposed to commit the crime. *United States v. Garrett*, 716 F.2d 257, 268 (5th Cir.1983), *cert. denied*, 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984). The admissibility of expert testimony on the defendant's unusual susceptibility to entrapment is a question of first impression in this Circuit. However, several other Circuits have ruled that expert psychiatric testimony is admissible to prove a defendant's unusual susceptibility to inducement and lack of predisposition to commit the crime.

In *United States v. Hill,* 655 F.2d 512 (3rd Cir.1981), *cert. denied,* 464 U.S. 1039, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984), the Third Circuit reversed a district court's ruling that the testimony of a clinical psychologist was inadmissible to prove that the defendant's psychological profile, subnormal intelligence and susceptibility to persuasion made him uniquely susceptible to inducement. Hill was on trial for narcotics distribution and claimed that a government informer had induced him to arrange sales with government agents. The court concluded:

"Testimony by an expert concerning a defendant's susceptibility to influence may be relevant to an entrapment defense. *United States v. Benveniste*, 564 F.2d 335, 339 (9th Cir.1977). An expert's opinion, based on observation, psychological profiles, intelligence tests, and other assorted data, may aid the jury in its determination of the crucial issues of inducement and predisposition.... A jury may not be able to properly evaluate the effect of appellant's subnormal intelligence and psychological characteristics on the existence of inducement or predisposition without the considered opinion of an expert.

Accordingly, if the expert can reach a conclusion, based on an adequate factual foundation, that the appellant, because of his alleged subnormal intelligence and psychological profile, is more susceptible and easily influenced by the urgings and inducements of other persons, such testimony must be admitted as relevant to the issues of inducement and predisposition."

*Hill,* 655 F.2d at 516.

In *United States v. McLernon,* 746 F.2d 1098 (6th Cir.1984), the Sixth Circuit stated that "expert testimony concerning a defendant's predisposition may be invaluable in an entrapment case." *Id.* at 1115. However, the court ruled that the trial court acted within its discretion in excluding the testimony because the defendant had not given Rule 12.2(b) notice of the expert's testimony until the sixth day of trial. *Id.*

In *United States v. Benveniste,* 564 F.2d 335 (9th Cir.1977), the Ninth Circuit stated that an expert's testimony was admissible on the issue of the defendant's psychological susceptibility to inducement. However,

the court ruled that the trial court did not abuse its wide discretion under Fed.R.Evid. 702 in excluding the testimony. After hearing the testimony out of the jury's presence, the court concluded that it would "confuse the jury and not shed any light on the issue." *Id.* at 339. *See also, United States v. Lord,* 711 F.2d 887, 892 (9th Cir. 1983) (refusal to admit psychiatric testimony on the issue of inducement should be reviewed under an abuse of discretion standard).

We conclude that when an entrapment defense is raised, expert psychiatric testimony is admissible to demonstrate that a mental disease, defect or subnormal intelligence makes a defendant peculiarily susceptible to inducement. The expert must demonstrate a proper factual foundation for his testimony either through personal interviews with or psychological testing of the defendant. Fed.R.Evid. 703; *Hill,* 655 F.2d at 516. The expert may not offer an opinion on the ultimate issues of whether the defendant was in fact induced to commit the crime or lacked predisposition. Fed.R.Evid. 704(b); *United States v. Lueben,* 812 F.2d 179, 184 (5th Cir.1987). However, he may testify that the defendant's mental disease, defect or subnormal intelligence made him more susceptible than the usual person to persuasion by government agents or rendered him incapable of forming the specific state of mind required for the offense.

We reject the government's contentions that the Insanity Defense Reform Act, 18 U.S.C. § 17(a), precludes expert testimony on susceptibility to inducement. In passing the Act, Congress wanted to ensure that "the insanity defense is not improperly resurrected in the guise of showing some other affirmative defense, such as that the defendant had a diminished responsibility or some similarly asserted state of mind which would serve to excuse the offense and open the door, once again, to needlessly confusing psychiatric testimony." *See, United States v. Pohlot,* 827 F.2d 889, 896 (3rd Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988), (*quoting,* S.Rep. No. 98–225, 98th Cong., 2d Sess. 229 (1984), *reprinted in*

1984 U.S.Code Cong. & Ad.News 3182, 3411). However, nothing in the Act or its legislative history suggests a Congressional intent to preclude psychiatric testimony relevant to the entrapment defense. The entrapment defense, both before and after passage of the Act, allows the defendant to argue that he lacked predisposition and he only committed the crime because he was induced to commit it by government agents. Psychiatric testimony that a defendant's mental disease, defect or subnormal intelligence made him more susceptible to inducement than a normal person or rendered him incapable of forming the specific intent required as an element of the crime would not be barred by the Act. *Pohlot,* 827 F.2d at 897.

Although we conclude that Hannie's testimony was admissible, we also conclude that the district court did not abuse its discretion by refusing to admit it. The trial court has wide discretion under Fed.R.Evid. 702 to admit expert testimony if it will "assist the trier of fact to understand the evidence or determine a fact in issue." In light of the lengthy and sometimes inconsistent explanation of the substance of Hannie's testimony by Newman's attorney, the trial court could easily have concluded that the testimony would needlessly confuse the jury. Newman's attorney stated that Hannie, among other things, would testify that Newman did not have the specific criminal intent needed to commit the offense in question. Testimony on the ultimate issue of intent is inadmissible under Fed.R.Evid. 704(b). Newman noticed his intent to present an insanity defense well before trial; however, he did not inform the court or the government that Hannie would testify on Newman's susceptibility to inducement until the government had rested its case. The trial court could have properly excluded the evidence on the basis that the government had insufficient time to procure rebuttal psychiatric witnesses. *McLernon,* 746 F.2d at 1115. Finally, Newman's proffer of testimony indicated that Hannie was not going to testify that Newman's mental disease, defect or subnormal intelligence made him susceptible to inducement. Rather, Hannie planned to testify that Newman's well-doc-

umented addiction to cocaine and depression over the activities of his business partners made him easy prey for government agents. This Circuit has consistently held that narcotics addiction standing alone without other psychological involvement raises no issue of mental disease or defect. *United States v. Lyons,* 731 F.2d 243, 245 (5th Cir.1984) (en banc), *cert. denied,* 469 U.S. 930, 105 S.Ct. 323, 83 L.Ed.2d 260 (1984).

While the record does not expressly demonstrate that the trial judge followed precisely the routine set out above, it does disclose that refusal to allow the psychologist to testify as the attorney proffered did not affect Newman's substantial rights. Any error or irregularity in this respect must be disregarded. Fed.R.Crim.Pro. 52(a).

### III.

For the foregoing reasons, the judgment of the trial court is

AFFIRMED.