**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Sanford G. KNAPP, Defendant–Appellant.**

**No. 93–2487.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1993.

Decided May 24, 1994.

Elsa Lamelas, Asst. U.S. Atty., Chris R. Larsen, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Milwaukee, WI, for plaintiff-appellee.

James M. Shellow (argued), Robert R. Henak, Dean A. Strang, Shellow, Shellow & Glynn, Milwaukee, WI, for defendant-appellant.

Before EASTERBROOK and ROVNER, Circuit Judges, and REINHARD, District Judge.*

REINHARD, District Judge.

Until recently, defendant Sanford G. Knapp was available and made his living as a lecturer and counselor to anyone interested in his field of expertise. Knapp was a self-proclaimed expert on pre-serving personal assets through creative estate planning. Ostensibly through his unique understanding of the United States Constitution, the Tax Code, the Internal Revenue Service (IRS) and the structuring of estate trusts, Knapp taught people how to avoid paying income taxes. On November 12, 1992, however, a jury in the United States District Court for the Eastern District of Wisconsin decided Knapp had participated in criminal actions. Knapp was convicted of participating in a conspiracy to defraud the United States by impeding and obstructing the IRS in the ascertainment and collection of the federal income taxes of his co-defendants, John and Lois Hillmer, in violation of 18 U.S.C. § 371; and with willfully aiding, assisting, counseling, and advising the preparation of a false and fraudulent federal income tax return for the Hillmers during 1985, in violation of 26

---

* The Honorable Philip G. Reinhard of the United States District Court for the Northern District of Illinois, sitting by designation.

U.S.C. § 7206(2). For this, the district judge sentenced Knapp to consecutive terms of imprisonment totalling eight years.

## BACKGROUND

John and Lois Hillmer were the proprietors of two small businesses, a water softener company called Bay Lakes Lindsey located in Two Rivers, Wisconsin and a laundromat located in Kewanee, Wisconsin. In November of 1982, a Revenue Agent (RA) of the IRS notified the Hillmers that their 1980 tax return was to be audited. As part of the audit the RA requested that the Hillmers produce copies of their returns for 1979 and 1981. The Hillmers' 1980 return was selected for audit because they were suspected of being "tax protesters." However, the audit revealed no "tax protestor characteristics," and, therefore, the RA proceeded with the case as a normal audit. In reviewing the Hillmers' tax returns for 1980 and 1981, the RA became concerned about how the Hillmers had allocated income among themselves and their children. The IRS then requested certain additional information and documents from the Hillmers.

Upon receipt of the request for additional information, the Hillmers consulted with Knapp, whom they had met at one of Knapp's lectures on constitutional issues. Knapp advised John Hillmer to ask the IRS for the authority under which it was requesting the information. When the RA received this query, he recognized it as being characteristic of tax protesters. The RA then closed the Hillmer audit as a contested matter, believing that further negotiations would not be productive. Once an audit is closed as being unresolved, the IRS will officially notify the taxpayer of its findings. If a tax deficiency exists, the taxpayer has the right to appeal the determination with either the IRS or the United States Tax Court. In May of 1983, the IRS notified the Hillmers of certain proposed changes to their 1980 and 1981 returns that would allocate more of the family's income to John Hillmer. This change would result in higher taxes for the Hillmers.

Shortly after receiving notice of the proposed changes from the IRS, the Hillmers again sought the advice of Knapp, who assisted the Hillmers in the creation of four separate trusts. Knapp was named as trustee for each trust. The Hillmers then transferred their assets, including their residential and business real estate, vehicles, and other property to the four trusts.

In May of 1983, the Hillmers' accountant and past tax preparer, Gerald Les Monde, met with both the Hillmers and Knapp to discuss the details surrounding the operation of the four trusts. Les Monde testified that he requested Knapp's presence at the meeting because the Hillmers had told him that Knapp was the one who was involved in setting up the trusts and that Knapp would be able to explain to Les Monde the tax ramifications of the trusts. During this meeting, Knapp explained how use of the trusts would result in lower taxes for the Hillmers. Knapp told Les Monde how the profit from the sole proprietorships should be taken and divided among the individual trusts. The trusts would then file their own returns claiming the profit from the proprietorships as taxable income, after taking the necessary expenses against the income. The Hillmers would take a deduction on their individual returns identified as rent paid to the trusts. The rent was to be an amount equal to whatever profit the Hillmers' business' received in a given year, thereby reducing their personal tax liability to zero.

Les Monde expressed his disagreement with the use of the trusts from both a recordkeeping and tax perspective. Les Monde told the Hillmers that the trusts would be a recordkeeping nightmare and that there would be greater taxes with the trusts than there would be without the trusts. Les Monde explained that the trusts, just like any other individual or business, must file tax returns and must pay income taxes.

John Hillmer disagreed with what Les Monde said, believing that the trusts would reduce his taxes. Thus, despite Les Monde's disagreement, the Hillmers followed Knapp's advice and decided to go forward with the trusts. Les Monde advised the Hillmers and Knapp, by letter, that he would not manage the trusts' accounts nor prepare the trusts'

tax returns. Knapp agreed to teach Lois Hillmer how to keep the books and records for the trusts.

Les Monde initially prepared the Hillmers' 1983 personal tax return without using the rent deduction formula suggested by Knapp. Lois Hillmer informed Les Monde that her husband would not sign the return. Les Monde then prepared a new return in accordance with Knapp's formula, taking a deduction for rent paid in an amount equal to the profit from the Hillmers' business. The Hillmers signed the second return. Les Monde never received any documentation from the Hillmers to support the actual payment of rent to the trusts in the amounts reflected on the Hillmers' returns. Les Monde testified that he did not believe that rent in the amounts reported on the returns was ever really paid.

The same pattern was followed during the tax years 1984 through 1988, with rent deductions offsetting business profits almost exactly. In 1985, the Hillmers filed a tax return listing rent deductions of $148,101, which resulted in a total income of $6, a business income of $1, and no tax due and owing. Les Monde testified that although he received some checks and records of cash payments from the Hillmers, those checks were never enough to substantiate the total rent deductions taken on their returns.

Les Monde testified that in 1985, while attending a tax seminar, he discussed the Hillmers' estate trust structure with another accountant. This accountant mailed Les Monde several copies of recent tax court decisions which discussed the legal flaws in using trusts as tax avoidance devices. After reading the cases, Les Monde again advised both the Hillmers and Knapp that what they were doing was not going to hold up in court. Knapp's response was that the Hillmers' trusts were different than the ones described in the tax court decisions.

After further investigation by the IRS, on April 14, 1992, a federal grand jury returned a six-count indictment against the Hillmers and Knapp. Count I of the indictment alleged that Knapp participated in a conspiracy to defraud the United States by impeding and obstructing the IRS in the ascertainment

and collection of the federal income taxes of John and Lois Hillmer, in violation of 18 U.S.C. § 371. Count III charged Knapp with willfully aiding, assisting, counseling, and advising the preparation of a false and fraudulent federal income tax return for John and Lois Hillmer during the year 1985, in violation of 26 U.S.C. § 7206(2). The remaining counts did not pertain to Knapp.

Knapp pled not guilty and represented himself during the subsequent jury trial. The jury returned guilty verdicts against all defendants on all counts. Knapp then retained counsel who represented him during the post-trial proceedings.

The district court had jurisdiction under 18 U.S.C. § 3231. Final judgment of conviction and sentence was entered June 15, 1993, and Knapp filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

Knapp raises four issues on appeal: 1) whether the district judge committed plain error in instruction of the jury; 2) whether the government's prosecution of Knapp violated the First Amendment; 3) whether Knapp was improperly denied tax audit information on prospective jurors; and 4) whether Knapp's rights under the Jencks Act were violated. The court will address these issues *seriatim*.

### I. Jury Instructions

Knapp did not proffer any jury instructions to the court nor did he object to the instructions given by the district judge. A party may not raise an error or omission in a jury instruction unless the party timely objected and "stat[ed] distinctly the matter to which that party object[ed] and the grounds of the objection." Fed.R.Crim.P. 30.

■■■ Knapp's failure to object to the instructions given constitutes a forfeiture of his right to appeal the propriety of such instructions. *See United States v. Jones*, 21 F.3d 165, 173 (7th Cir.1994). Consequently, the sole source of our authority to review the challenged instructions is Federal Rule of

Criminal Procedure 52(b). *Id.* at 172–173. Rule 52(b) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Under Rule 52(b), we are required to correct any forfeited plain error affecting substantial rights if such error seriously affects the fairness, integrity or public reputation of the judicial proceeding. *United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993). A plain error is one that is clear or obvious. *Id.* —— U.S. at ——, 113 S.Ct. at 1777. To affect a substantial right, the error must have been so prejudicial as to affect the outcome at trial. *Id.* —— U.S. at ——, 113 S.Ct. at 1778. Applying these plain error principles, we turn to the two instructional errors Knapp raises in this appeal.

## A. Failure To Instruct The Jury On An Element Of The Crime Charged

■ Knapp first asserts the district judge plainly erred by failing to instruct the jury on a required element of conspiracy to defraud. Section 371 provides that "if two or more persons conspire ... to defraud the United States ... and one or more of such persons do any act to effect the object of the conspiracy, each shall [have committed a crime against the United States]." Knapp contends the district judge plainly erred by failing to specifically instruct the jury on the definition of the words "to defraud". In this regard, Knapp argues that the district judge should have instructed the jury that it could convict him of conspiracy only if he agreed to impede or obstruct the IRS by deceitful or dishonest means. Knapp claims that by not including this definition, the district judge effectively read the fraud element out of the proof necessary to support his conviction. Knapp cites *Hammerschmidt v. United States,* 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968 (1924), and *United States v. Caldwell,* 989 F.2d 1056 (9th Cir.1993), in support of his argument.

In the present case, it is readily apparent that the jury was instructed that the government must prove Knapp defrauded the United States. Knapp's argument on appeal focuses simply on whether the term "defraud" should have been defined. Whether the failure to do so constitutes a clear or obvious error in this context is of no consequence, however, as any such error did not, under these circumstances, affect Knapp's substantial rights.

As required under the Constitution, the jury was instructed on all essential elements of the crime. *See Cabana v. Bullock,* 474 U.S. 376, 384, 106 S.Ct. 689, 696, 88 L.Ed.2d 704 (1986). Such instruction included the reading of Count I of the indictment, which specifically described the charged conspiracy as one to defraud the United States by impeding, impairing and obstructing the IRS. Section 371, which was also read to the jury, does the same. Absent any indication in the record that the jury was led to believe that "defraud" meant anything other than its commonly understood definition, Knapp was not denied a substantial right by the district judge's failure to further define the term "defraud" in this context. Furthermore, the failure to define "defraud" can hardly be said to seriously affect the fairness, integrity or public reputation of the trial in light of the instructions given and the proofs at trial. *See United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985) (when addressing plain error, a reviewing court cannot properly evaluate a case except by viewing such a claim against the entire record). Accordingly, failure to specifically define the phrase "to defraud" to the jury in this case was not plain error.

In so holding, we consider Knapp's reliance on *Hammerschmidt v. United States,* 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968 (1924), and *United States v. Caldwell,* 989 F.2d 1056 (9th Cir.1993), to be misplaced. Both of those cases merely stand for the proposition that a defendant cannot be found guilty of defrauding the United States without some showing of fraud. That, however, is a different question than whether the term fraud need be defined to the jury, particularly where a defendant has failed to challenge the lack of such instruction.

## B. Failure To Give A *Cheek* Instruction

■ Knapp contends the district judge's second plain error lay in failing to instruct

the jury that a good faith misunderstanding of law, even if unreasonable, negates the element of willfulness required to support the charge in Count III of the indictment and would, therefore, constitute a complete defense to the section 7206 charge. In this regard, he relies on *Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991).

In *Cheek,* the government prosecuted John Cheek for tax evasion and for willfully failing to file federal tax returns, violations of 26 U.S.C. §§ 7201 and 7203. At trial, Cheek testified that based on professional opinions about the validity of the federal income tax laws, he honestly believed he was not required to pay federal income taxes or file tax returns. *Cheek,* 498 U.S. at 195–96, 111 S.Ct. at 607. At the conclusion of Cheek's trial, the district judge instructed the jury that only an objectively reasonable misunderstanding of the law negates the statutory requirement that Cheek's action be "willful." We upheld the use of this instruction and affirmed Cheek's convictions. *See United States v. Cheek,* 882 F.2d 1263, 1267 (7th Cir.1989). The Supreme Court, however, subsequently rejected this "objective reasonableness" standard in criminal tax cases and held that a good faith misunderstanding or a good faith belief that one is not violating the law negates willfulness, whether or not that belief is objectively reasonable. *Cheek,* 498 U.S. at 202–03, 111 S.Ct. at 611.

The argument here revolves around whether Knapp relied on a misunderstanding-of-law defense at the trial. Knapp now claims he did and that he was denied any instruction on his theory of defense. Of course, in light of Knapp's failure to challenge the lack of such an instruction, the ultimate issue is whether the failure to so instruct was plain error.

■ A defendant is entitled to an instruction on his theory of defense if: the defendant's theory is supported by the evidence;

the defendant's theory is not part of the charge; and the failure to include an instruction on the defendant's theory of defense in the jury charge would deny the defendant a fair trial. *United States v. Douglas,* 818 F.2d 1317, 1320–21 (7th Cir.1987). The government argues that Knapp did not rely on this defense at trial, nor was such a defense supported by the evidence. Therefore, it claims that a good faith instruction would not have been warranted even had one been submitted to the district judge.

■ Given the nature of Knapp's defense at trial, the government suggests this issue is controlled by *United States v. Sloan,* 939 F.2d 499 (7th Cir.1991), and *United States v. Bressler,* 772 F.2d 287 (7th Cir.1985), *cert. denied,* 474 U.S. 1082, 106 S.Ct. 852, 88 L.Ed.2d 892 (1986). In both *Sloan* and *Bressler,* we held that erroneous instructions regarding a "good-faith defense, which required the misunderstanding to be 'objectively reasonable', did not constitute plain error because the district court had properly instructed the jury that willfulness is a 'voluntary and intentional violation · of a known legal obligation,' and because the 'evidence clearly established that the defendant did not misunderstand the law.'" *Sloan,* 939 F.2d at 502 (quoting *Bressler,* 772 F.2d at 291). Here, the jury was properly instructed on the definition of wilfulness, and the record is replete with Knapp's teachings on estate planning, lawful ways to avoid paying taxes, the tax laws, the IRS and the Constitution of the United States. A thorough review of the record reveals that, time and time again, Knapp insisted that everything he did was within the law. Knapp never claimed he misunderstood the law. Consequently, there was no clear or obvious error in the district judge's failure to give a *Cheek* instruction, nor did such failure, if error, deny Knapp his substantial rights. Thus, we hold no plain error occurred in this regard.[1]

1. We note that at oral argument in this appeal, Knapp's attorney questioned, for the first time, the propriety of the district judge instructing the jury regarding Knapp's status as a tax protestor. The jury was instructed that if they found Knapp to be a tax protestor during the years in question, they could consider his status, statements and

actions concerning the payment of income taxes as circumstantial evidence in determining willfulness for failing to file returns for those years.

This issue was not raised in the district court, *see Dempsey v. Atchison, Topeka and Santa Fe Ry. Co.,* 16 F.3d 832, 835 n. 3 (7th Cir.1994), nor directly raised as a specific contention of instruc-

## II. First Amendment

■ Knapp contends his actual involvement with the Hillmers was limited to verbally advising Les Monde, the Hillmers' accountant, in May of 1983. Thus, he argues he was convicted for engaging in protected free speech in violation of the First Amendment to the Constitution of the United States in light of *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). In *Brandenburg*, the Supreme Court held that speech which merely advocates law-breaking, but incites no present harm, is protected. *Brandenburg*, 395 U.S. at 448–49, 89 S.Ct. at 1830–31.

Here, however, Knapp was specifically charged with conduct outside the scope of the First Amendment:

On or about April 15, 1986, in the Eastern District of Wisconsin, SANFORD G. KNAPP, the defendant, did willfully aid and assist, counsel, and advise the preparation of John Hillmer and Lois Hillmer's joint U.S. income tax return, Form 1040 for the calendar year 1985, which was false and fraudulent as to a material matter, in that the defendant advised the Hillmers' tax return preparer, Gerald Les Monde, to claim a deduction on said return for the rental of business property in an amount sufficient to eliminate profit, whereas, as the defendant then and there well knew, and had reason to know, John and Lois Hillmer had not paid such rent, and were not entitled to such a deduction. All in violation of Title 26, United States Code, Section 7206(2).

As thus described in the indictment, Knapp's speech and conduct constitute precisely the type of involvement in unlawful action found to be outside the scope of the First Amendment. *See United States v. Kelly*, 864 F.2d 569, 576–77 (7th Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 23 (1989) (upholding the conviction of a tax shelter promoter whose advice led to the preparation of false returns by those investing in the

shelter). *See also United States v. Rowlee*, 899 F.2d 1275, 1279 (2d Cir.), *cert. denied*, 498 U.S. 828, 111 S.Ct. 87, 112 L.Ed.2d 59 (1990) (consensus among circuits is that liability for a false and fraudulent tax return cannot be avoided by invoking the First Amendment). The proof at trial showed the jury that Knapp did, in fact, commit a criminal act as charged in the indictment: Knapp willfully assisted the preparation of a false return by advising the Hillmers' tax return preparer to claim a deduction on the Hillmers' 1985 tax return to the rental of business property in an amount sufficient to eliminate profit, while knowing that the Hillmers had not paid such rent and were not entitled to such a deduction. This conduct is well beyond the mere advocacy entitled to the protection of the First Amendment.

## III. 26 U.S.C. § 6103(h)(5) Juror Audit History

Section 6103(h)(5) provides both the government and the taxpayer, in civil and criminal tax cases, the right to request from the Secretary of the Treasury, in writing, a yes or no response to the question whether a potential juror has ever been audited or investigated by the IRS. In relevant part, section 6103(h)(5) of the United States Code, Title 26, provides:

In connection with any judicial proceeding described in paragraph (4) to which the United States is a party, the Secretary [of the Treasury] shall respond to a written inquiry from an attorney of the Department of Justice ... or any person (or his legal representative) who is a party to such proceeding as to whether an individual who is a prospective juror in such proceeding has or has not been the subject of any audit or other tax investigation by the Internal Revenue Service. The Secretary shall limit such response to an affirmative or negative reply to such inquiry.

tional error in Knapp's brief on appeal, *see* Fed. R.App.P. 28(a)(5); *Travelers Ins. Co. v. Penda Corp.*, 974 F.2d 823, 833 (7th Cir.1992) (citing *Beard v. Whitley County REMC*, 840 F.2d 405, 408–09 (7th Cir.1988)), and, therefore, we decline to consider it. Even were we to construe

broadly Knapp's First Amendment argument, discussed *infra*, as raising this instructional error, the giving of such instruction was not plain error because the charge was limited to conduct not protected by the First Amendment and the proof of Knapp's guilt was overwhelming.

458

26 U.S.C. § 6103(h)(5) (1994). The statute was enacted without instructions or procedures regarding its implementation, or the substantive consequences, if any, for noncompliance. Because we conclude Knapp waived this issue for review, and, therefore, it is not squarely before us, we reserve for another day the question of precisely how the statute is to be implemented or what circumstances constitute effective compliance with section 6103(h)(5).[2]

After indictment and prior to trial, Knapp filed a plethora of documents with the court. These pretrial filings included legitimate requests for information, most in the form of demands, interspersed with the well-worn boilerplate of the tax protest movement. In many instances, both the government and the court had to parse the wheat from the chaff in order to understand what Knapp was demanding. Four of Knapp's pretrial filings relate to the issue he now attempts to raise, for the first time, on appeal; the denial of his right to receive audit information of potential jurors, pursuant to 26 U.S.C. § 6103(h)(5).

A review of the record reveals that Knapp made two requests for information regarding the jury pool. The first request, addressed to the court, related to any and all information the government had, or intended to acquire, regarding the potential jurors. The second was an independent request, addressed to the district court clerk, for potential juror information, referring to section 6103(h)(5). The first request involved three filings. The first filing was entitled "Notice And Demand For Discovery And Production Of Any And All Evidence Of Jury Contact By The Government." The second relevant filing was entitled "Notice and Demand For Production Of Information." With these two filings, Knapp sought any and all information obtained or to be obtained by the government regarding the jury panel in this case. This included tax audit information of potential jurors allowed by section 6103(h)(5).

2. Most of the disputes regarding this statute have been premised upon the time necessary for receipt of the information requested from the Secretary of the Treasury. In these cases the defendant has made a timely request of the district court for release of potential juror information, received the information, and then requested the audit information regarding the potential jurors from the Secretary of the Treasury. Some circuits have ruled upon this issue because the defendant has received the potential juror names from the district court, but has not received some or all of the information requested from the Secretary of the Treasury prior to the date of trial and the trial court proceeded with the trial. *See United States v. Droge*, 961 F.2d 1030, 1037 (2d Cir.1992); *United States v. Spine*, 945 F.2d 143 (6th Cir.1991); *United States v. Masat*, 896 F.2d 88, 94–95 (5th Cir.1990). Other circuits have ruled upon this issue because the trial court has refused to provide information on the potential jury pool. *See United States v. Holden*, 963 F.2d 1114, 1115–16 (8th Cir.1992); *United States v. Schandl*, 947 F.2d 462, 467–69 (11th Cir. 1991).

Several approaches have evolved from the seven circuit courts that have interpreted the rights conferred by § 6103(h)(5). The majority adopts the rule that "errors in compliance may be rendered harmless by appropriate voir dire." *United States v. Droge*, 961 F.2d 1030, 1034 (2nd Cir.1992). This standard has been adopted by the Second, Fifth, Sixth, Eighth and Eleventh Circuits.

Two other views have been promulgated by the Ninth and the First Circuits. The Ninth Circuit has held that a defendant's timely pretrial request for the jury list required the district court to respond in sufficient time before trial to enable the defendant to obtain the audit information from the Secretary of the Treasury. It characterized the defendant's right as absolute but declined to establish a per se reversal standard for non-compliance. *United States v. Hashimoto*, 878 F.2d 1126, 1129–35 (9th Cir.1989). However, the Ninth Circuit has subsequently modified its view regarding non-compliance. *See United States v. Hicks*, 947 F.2d 1356, 1360–61 (9th Cir.1991) (court's erroneous limitation on request to Treasury for only past six years' data harmless in light of voir dire questions as to whether jurors had ever been audited).

Finally, the First Circuit has given the statute another construction. The First Circuit has read the statute to suggest the pre-trial audit information is to be used as a veracity-checking device. Therefore, if the information is not available prior to the start of the trial, a jury may be selected. However, the information must be available prior to the jury being sworn. *See United States v. Huguenin*, 950 F.2d 23, 28–30 (1st Cir.1991); *United States v. Lussier*, 929 F.2d 25, 29–30 (1st Cir.1991) (per curiam).

We observe that in the instant case, the district judge first provided Knapp the opportunity to request that the court ask particular *voir dire* questions of the venire, and he then, at the government's request, conducted a thorough *voir dire* examination. During this extensive *voir dire*, the district judge elicited more information regarding the potential jurors attitudes and histories regarding the IRS than would have been available from the Treasury Secretary.

Knapp was apparently concerned about achieving information parity with the government. He did not include in this first request any independent demand to have the information if the government did not have it or intend to get it. We quote from Knapp's Notice And Demand For Production Of Information, document number 21 in the district court record:

> To allow the prosecution, by way of taxpayer funds, to acquire and store information which would assist them in selecting a jury in this case would be fundamentally unfair unless and until the Defendant has access to the same information.

> WHEREFORE, the Defendant demands from this honorable Court an order allowing discovery and production of any and all information obtained or to be obtained by the prosecution regarding the jury panel in this case.

The government responded to Knapp's demand by stating that it had no information regarding potential jurors, nor did it intend to acquire any information regarding potential jurors. The government informed the court it intended to rely upon the voir dire for audit information regarding the prospective jurors. The government suggested that, if the court should so order, it would acquire the information Knapp was seeking and deliver it to Knapp.

Based upon these representations, both Knapp and the government were at parity, and, thus, the magistrate judge interpreted Knapp's demands regarding information about potential jurors to be moot and denied Knapp's demand. Knapp filed an objection (the third relevant filing) to this ruling with the district judge. The district judge never ruled on Knapp's objection. This, however, does not lend Knapp any support for this appeal. His initial request was for information parity. It was not an independent, timely request for access to potential juror audit information.

While the magistrate judge had Knapp's initial request for information under advisement, Knapp sent a letter (the fourth relevant filing) to the clerk of the district court. This letter, dated July 25, 1992, requested the names and addresses of the prospective jurors who may be selected for his trial. Knapp quoted the dictates of section 6103(h)(5) and informed the clerk of the date Judge Evans had established for his trial, September 15, 1992. Knapp sent a carbon copy of his July 25 letter to the government.

On appeal, the government claims there is a handwritten notation on the upper right hand corner of the filed copy of Knapp's July 25 letter which suggests that Knapp was sent a potential juror list. We do not find such a notation. The question of whether Knapp was sent a potential jury list based upon his letter of July 25, 1992, however, is inconsequential. Knapp did not file his request by motion addressed to the court, pursuant to either Rule 12 or Rule 47 of the Federal Rules of Criminal Procedure. Knapp sent a letter to the district court clerk. Further, Knapp did not inform the district court of the fact that he lacked this information when the trial started.

■ Knapp now claims his right to potential juror audit information pursuant to section 6103(h)(5) has been violated. He bases this contention and this appeal regarding this issue on the communications described *supra*. We conclude that Knapp was aware of his right to receive this information and that he made at least one independent request for juror audit information, albeit to the clerk of the court. The record is unclear regarding whether or not he received the information. However, on this record we decline to charge the district judge with the affirmative duty to ascertain whether or not Knapp had requested or received potential juror audit information. This issue should have been brought, by Knapp, to the attention of the district judge by a timely motion prior to proceeding with the trial. *See United States v. Droge*, 961 F.2d 1030, 1036 (2d Cir.1992). This would have allowed the district judge to decide upon the proper course of action. Further, if the district judge determined that a thorough voir dire would satisfy the dictates of section 6103(h)(5) and Knapp did not agree, Knapp could have objected to proceeding with trial without giving him time to acquire the information he sought.

**460**

■ Accordingly, Knapp waived his right to appeal this issue because: (1) he failed to make a proper request, pursuant to either Rule 12 or Rule 47 of the Federal Rules of Criminal Procedure, for release of potential juror information from the district judge; (2) he did not inform the district judge that he lacked this information prior to or during the trial; and (3) he did not object to proceeding to trial without acquiring the information. Failure to bring matters to the attention of the district judge precludes consideration of those matters on appeal. *See, e.g., United States v. Monzon*, 869 F.2d 338, 342 (7th Cir.1989) (failure to make district court aware of circumstances surrounding evidence defendant wants suppressed waives right to rely on those circumstances on appeal); *United States v. Carmel*, 801 F.2d 997, 1000 (7th Cir.1986) (failure to bring factual dispute to attention of district court waives review of dispute on appeal). Knapp may not now complain of any error by the district judge.

*IV.   Jencks Act Information*

■ Knapp filed a broad pretrial discovery motion which, among other things, made a general request for the production of relevant written or recorded statements of potential government witnesses. In response, the government stated it would comply through its local "open-file" discovery policy, except for the prior testimony of grand jury witnesses which would be produced under the terms of the Jencks Act, 18 U.S.C. § 3500.[3] Based upon the government's response to Knapp's motion, Magistrate Judge Goodstein found his request moot.

Subsequent to filing his general discovery request, Knapp discovered that the government's "open file" did not contain the names of witnesses, their proposed testimony or other specific information he sought to acquire. Also, Knapp wanted to see Volume I of Special Agent Thomas Larson's report. When informed that Volume I of the report, as well as other specific information, was not part of the "open file" and would not be provided, Knapp filed an objection to the magistrate judge's Order. Knapp, therefore,

was aware that access to Volume I of Larson's report was specifically denied to him by the government prior to trial. Knapp, however, did not request this report at trial following Larson's testimony. Now, on appeal, Knapp claims the failure to turn over the Larson report violates the Jencks Act.

Knapp contends the magistrate judge found his original discovery motion moot because he reasonably construed the government's response and its "open-file" discovery policy as an agreement that all discoverable materials are part of the "open file" and had been or would be provided to Knapp prior to trial. Knapp's contention appears to be based upon his subjective understanding of the scope of information available to him and his interpretation of the government's "open file" discovery policy. However, there is nothing in the record to support the inference that other specific Jencks Act material, not in the "open file" of the government, would be produced prior to trial under this policy, and, in fact, Knapp was so informed as it relates to Larson's report.

Knapp further argues that even though he failed to request the Larson report following Larson's testimony at trial, this issue falls directly within the holding of the Fifth Circuit in *United States v. Newman*, 849 F.2d 156 (5th Cir.1988), in that "[w]here the government agrees to produce Jencks material before trial, the defendant does not have to move for the material at the close of each witness's testimony." *Id.* at 159. The government maintains, however, that there was no agreement to disclose Special Agent Larson's report as part of its "open-file" policy. The government contends Knapp knew its "open file" did not include Volume I of Special Agent Larson's report, knew of the government's pretrial refusal to produce it, but yet failed to specifically request that it be produced following Larson's direct testimony as required by the Jencks Act.

We agree with the government that the principle set forth by the Fifth Circuit in *Newman* is inapplicable here, because there is no showing that the government agreed that all Jencks Act material would be dis-

---

**3.** The government in fact agreed to produce the prior testimony of grand jury witnesses one day prior to trial rather than after the witnesses testified at trial.

closed prior to trial, rather than only what was contained in the government's open file and the testimony of grand jury witnesses to be produced one day prior to trial. The general rule is that a defendant is required to request disclosure following the witness's direct testimony. *See United States v. Mack*, 892 F.2d 134, 137 (1st Cir.1989), *cert. denied*, 498 U.S. 859, 111 S.Ct. 162, 112 L.Ed.2d 127 (1990); *United States v. Petito*, 671 F.2d 68, 73–74 (2d Cir.), *cert. denied*, 459 U.S. 824, 103 S.Ct. 56, 74 L.Ed.2d 60 (1982); *United States v. Lyman*, 592 F.2d 496, 498–99 (9th Cir.), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2864, 61 L.Ed.2d 300 (1979); *see also United States v. Spatuzza*, 331 F.2d 214, 218 (7th Cir.) (defendant must request production of materials under Jencks Act), *cert. denied*, 379 U.S. 829, 85 S.Ct. 58, 13 L.Ed.2d 38 (1964). Consequently, Knapp's failure to request Larson's report following Larson's direct testimony in these circumstances waived any issue of error relating to the government's failure to produce the report.

### CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.

AFFIRMED.