# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 24027**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Eileen G. ECHALUSE**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary[1]

Decided 25 September 2025

———————————

*Military Judge*: Christopher D. James.

*Sentence*: Sentence adjudged 14 April 2023 by SpCM[2] convened at Osan Air Base, Republic of Korea. Sentence entered by military judge on 5 June 2023: Reduction to E-6 and a reprimand.

*For Appellant*: Major Heather M. Bruha, USAF.

*For Appellee*: Colonel Steven R. Kaufman, USAF; Colonel G. Matt Osborn, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Barios, USAF; Major Kate E. Lee, USAF; Major Tyler L. Washburn, USAF; Mary Ellen Payne, Esquire.

Before GRUEN, PERCLE, and MORGAN, *Appellate Military Judges*.

Judge PERCLE delivered the opinion of the court, in which Senior Judge GRUEN and Judge MORGAN joined.

———————————

[1] Appellant appeals her conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A), *Manual for Courts-Martial, United States* (2024 ed.) (2024 *MCM*).

[2] Pursuant to Article 16(c)(2)(A), UCMJ, 10 U.S.C. § 866(c)(2)(A), *Manual for Courts-Martial, United States* (2019 ed.).

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

PERCLE, Judge:

A special court-martial consisting of a military judge alone under Article 16(c)(2)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 816(c)(2)(A), convicted Appellant, contrary to her pleas, of three specifications of negligent dereliction of duty in violation of Article 92, UCMJ, 10 U.S.C. § 892.[3] The military judge sentenced Appellant to reduction to the grade of E-6 and a reprimand. The convening authority took no action on the findings or sentence but supplied the language of the adjudged reprimand.

Appellant raises five issues on appeal, which we have reworded: (1) whether the findings are ambiguous, thus preventing this court from conducting a factual sufficiency review under Article 66, UCMJ, 10 U.S.C. § 866; (2) whether the findings are factually and legally sufficient; (3) whether AFI 36-2909[4] and AFI 1-1[5] are unconstitutional as applied to Appellant; (4) whether the military judge abused his discretion when he denied the Defense's Rule for Courts-Martial (R.C.M.) 914 motion to strike Senior Airman (SrA) LI's testimony; and (5) whether the military judge was biased against Appellant and in favor of the Prosecution.[6,7]

---

[3] Unless otherwise noted, all references in this opinion to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[4] Air Force Instruction (AFI) 36-2909, *Air Force Professional Relationships and Conduct* (14 Nov. 2019).

[5] AFI 1-1, *Air Force Standards* (18 Aug. 2023).

[6] Appellant personally raises issue (5) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[7] Although not raised by Appellant, "[a] presumption of unreasonable delay [arises when] appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the Court of Criminal Appeals." *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). As of the date of this opinion, Appellant's case has been in appellate review for longer than 18 months. Appellant has made no specific assertion of her right to timely appellate review, nor claimed prejudice on this issue, and we find none. Because we find no particularized prejudice, and the delay is not so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system," we likewise find no due process violation. *See*

With respect to issue (4), we find the military judge abused his discretion when he found the Defense's R.C.M. 914 motion to strike SrA LI's testimony was waived at trial. Accordingly, we set aside the findings of guilty and sentence, authorize a rehearing, and therefore do not address the remaining issues.

## I. BACKGROUND

Appellant was charged, *inter alia*, with three specifications of dereliction of duty for negligently failing "to refrain from having an unprofessional relationship" with subordinate Airmen—IS, ST, and RL—on divers occasions, in violation of Article 92, UCMJ.[8] The military judge found Appellant guilty of a negligent violation of this duty for "having an unprofessional relationship with" IS, ST, and RL, respectively, but excepted out the words "on divers occasions" from each specification and found Appellant not guilty of the excepted words.[9]

Appellant was the manager of the dining facility at Osan Air Base during the charged timeframe. IS, ST, and RL, among others, worked under Appellant's supervision. Appellant was alleged to have developed an unprofessional relationship with all three Airmen through perceived favoritism and friendship, and that such friendship and favoritism with IS, ST, and RL manifested at the office, off-duty at bars near base, and an overnight trip to Seoul.

During Appellant's court-martial, the trial defense counsel objected to the testimonies of four witnesses—Staff Sergeant (SSgt) NA, SrA JE, SrA TM, and SrA LI—citing R.C.M. 914 for allegedly missing signed pretrial statements of the aforementioned witnesses. We adopt the military judge's findings of fact in

---

*United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). We also decline to exercise our power under Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2) (2024 *MCM*), to grant Appellant relief for the post-trial delay in this case. *See United States v. Valentin-Andino,* 85 M.J. 361, 364–67 (C.A.A.F. 2025*)*.

[8] Appellant was also charged but acquitted of one specification of negligent dereliction of duty, on divers occasions, for failing to "discourage unprofessional relationships within the unit," also in violation of Article 92, UCMJ.

[9] The military judge did not enter special findings or indicate on which occasion he found Appellant guilty for each specification. *See United States v. Walters,* 58 M.J. 391, 396 (C.A.A.F. 2003) ("Where a specification alleges wrongful acts on 'divers occasions,' . . . any findings by exceptions and substitutions that remove the 'divers occasions' language must clearly reflect the specific instance of conduct upon which their modified findings are based."). Given we resolve this issue on other grounds, further discussion on the *Walters* issue in findings is obviated.

his ruling on the R.C.M. 914 motion and summarize them in sections A and B below:[10]

## A. Commander Worked Issues (CWI) Investigation[11]

The Force Support Squadron (FSS) commander appointed Master Sergeant (MSgt) KR to investigate, *inter alia*, whether members of the FSS believed anyone assigned to the dining facility where Appellant worked "has fostered or currently fosters an environment that created or currently creates an appearance of favoritism or unprofessionalism within the workplace." MSgt KR was also asked to investigate if anyone had "any knowledge of improper behavior or [an] unprofessional relationship caused or influenced by anyone in the [dining facility] or in [the] FSS either on or off duty."

During her investigation, MSgt KR interviewed SSgt NA, SrA JE, SrA TM, and SrA LI, as well as other witnesses. No one was present during the interviews except for the witness being interviewed and MSgt KR.

When MSgt KR interviewed SSgt NA, MSgt KR took notes on a notepad, then typed her notes onto an Air Force Form 1168, *Statement of Suspect/Witness Complainant* (AF Form 1168). MSgt KR then showed the typed notes to SSgt NA, who reviewed the form. SSgt NA agreed the typed notes contained her statements from the interview, signed the statement, and gave it back to MSgt KR. MSgt KR turned over the signed statement to her commander. As of the time of the court-martial, the signed statement of SSgt NA was "no longer in the possession of the [G]overnment."

When MSgt KR interviewed SrA JE, she did not show him an AF Form 1168. Instead, MSgt KR wrote out SrA JE's statement on a notepad and had SrA JE review it. SrA JE did not sign the statement. At trial, SrA JE reviewed a typed and unsigned AF Form 1168 purporting to contain his statement, which SrA JE said was "mostly correct" but there was a portion of the statement that was "incorrect" and differed from his original statement. As of the

---

[10] Unless directly quoted or otherwise noted, we summarize the military judge's relevant facts in this opinion.

[11] A "Commander Worked Issues" investigation is different from a Commander Directed Investigation (CDI) as it is an informal complaint process where military members may go directly to their chain of command (*e.g.*, supervisor, first sergeant, commander) "prior to or without contacting the installation [Equal Opportunity] office to informally resolve their allegations of prohibited discrimination, discriminatory harassment (including sexual harassment), and/or other forms of harassment (bullying and hazing)." *See* Department of the Air Force Instruction 36-2710, *Equal Opportunity Program* ¶ 4.13.4 (23 May 2024).

time of the court-martial, the original written statement reviewed by SrA JE was "no longer in the possession of the [G]overnment."

MSgt KR also interviewed SrA TM. After the interview, SrA TM reviewed an AF Form 1168 summarizing her interview and signed that form. MSgt KR turned over the signed statement to her commander. At the court-martial, the signed statement of SrA TM was "no longer in the possession of the [G]overnment."

When MSgt KR interviewed SrA LI, SrA LI also made a pretrial statement to MSgt KR that was reduced to writing and signed. MSgt KR turned SrA LI's written statement over to her commander, and as of the time of the court-martial, the original signed statement was "no longer in the possession of the [G]overnment."[12]

## B. Trial Testimony

SSgt NA, SrA JE, SrA TM, and SrA LI testified at Appellant's trial on behalf of the Government. Immediately after the direct examinations of SSgt NA, SrA JE, and SrA TM, trial defense counsel moved to strike their testimony based on the Government's failure to comply with R.C.M. 914, "specifically that there was a pretrial statement made by [SSgt NA, SrA JE, and SrA TM]" and the statements "were never delivered" to Appellant.

After the Government's direct examination of SrA LI, trial defense counsel did not object to this testimony under R.C.M. 914 and instead cross-examined SrA LI. After testifying, SrA LI was temporarily excused and subject to recall. Three days later, SrA LI was recalled by the Government, remaining a witness in the Government's case-in-chief. During her recalled testimony, SrA LI "mentioned making a pretrial statement." After this direct examination, trial

---

[12] Although not part of the military judge's findings of fact, we note the record of trial shows the trial defense counsel requested discovery in the case on 17 March 2023, asking for, *inter alia*, "any handwritten, typed, or recorded statements" of the accused and "other potential witnesses." This request also stated, "[I]f any statements (e.g. draft statements) have been destroyed or lost, notice of their prior existence is also requested." On 5 April 2023, trial defense counsel emailed the trial counsel stating, "We have interviewed several witnesses who have stated they signed statements for [MSgt KR's] investigation. We do not have those signed statements as they were not part of the discovery sent thus far. . . . We respectfully request the [G]overnment turn over the signed statements." Trial began five days later, on 10 April 2023.

We also note that SrA LI testified that she "did not believe" she made any changes to her statement after reviewing it, but the military judge did not address this statement in his findings of fact or conclusions after he ruled the objection to SrA LI's missing signed pretrial statement waived.

defense counsel moved to strike SrA LI's testimony "based upon the [G]overnment failing to comply with [R.C.M.] 914." Trial defense counsel acknowledged they knew, at the time they originally cross-examined SrA LI three days earlier, that the missing pretrial statement was not in the possession of the Government and elected not to object until later in the trial.

The military judge deferred ruling on the R.C.M. 914 motions and later took up the motions all together prior to the Defense resting their case.

## C. R.C.M. 914 Ruling

The military judge ruled on the R.C.M. 914 motion as follows:

> The defense has met its burden to prove the pretrial statements made by [SSgt NA, SrA JE, and SrA TM] were never turned over to the [D]efense and therefore their testimony should be stricken in accordance with R.C.M. 914. The [D]efense has not met its burden regarding the pretrial statement of [SrA LI]. As such, the in-court testimony of [SSgt NA, SrA JE, and SrA TM] will not be considered by this court, but [SrA LI]'s testimony will.

The military judge further stated, "it is not in dispute" that all four witnesses made pretrial statements, and the Government conceded at trial those four statements would qualify under R.C.M. 914 as pretrial statements. The military judge also noted that the Government conceded all four of the pretrial statements were once in the possession of the Government. The military judge considered the negligence of the Government in losing the pretrial statements of all four witnesses and found that while there was no evidence of gross negligence by the Government in this loss, the "good faith loss doctrine" did not apply to overcome the Government's negligence regarding the loss of all four statements.

However, as to SrA LI's in-court testimony, the military judge ruled that it would not be stricken because "the [D]efense did not object to [her] testimony before cross-examining [her] . . . ." Because the Defense knew about the pretrial statement during the original cross-examination and waited until later in the trial to object, the military judge ruled that the Defense "waived the right to make that argument." The military judge found that the "plain language" of R.C.M. 914 required the objection occur "after direct examination" and that by failing to object after the initial direct examination the Defense "intentional[ly] relinquish[ed] or abandon[ed] [ ] a known right." The military judge concluded the Defense "affirmatively waived any issue regarding R.C.M. 914 and [SrA LI's] testimony."

**D. The Government's Remaining Case-in-Chief**

With the exclusion of SSgt NA, SrA JE, and SrA TM's testimony after the R.C.M. 914 ruling, the Government relied on ten other witnesses in support of its case. Two of those witnesses were RL and ST, who were named in the specifications as indicated *supra*, and testified under a grant of immunity for their role in Appellant's unprofessional relationship with them. RL and ST were among the three named Airmen who worked at the dining facility and, as alleged, Appellant formed an unprofessional relationship with them (referred to as the "in-crowd"). The rest of the Airmen who worked in the same office or dining facility were not named in the specifications (and were referred to as the "out-crowd").

The Government's theory of the case, as argued during their closing argument on findings, was that Appellant behaved unprofessionally due to "favoritism, friendship, going to bars, drinking together and sharing [a rental home] in Seoul" with the "in-crowd."

The first witness called by the Government in its case-in-chief was SrA LI—the witness at issue in the "waived" R.C.M. 914 objection. SrA LI was a member of the "out-crowd." SrA LI's testimony set the scene to establish the Government's case that Appellant was unprofessional with all three members of the "in-crowd." SrA LI identified Appellant and discussed the environment inside the dining facility during Appellant's leadership—for example, SrA LI perceived Appellant talked more frequently and casually at work with the "in-crowd" but was more formal and detached from others. After testifying she felt excluded during work, SrA LI recounted her perceptions that, while Appellant was in charge, the work schedules and compensatory days in the dining facility favored the "in-crowd" Airmen. SrA LI also testified that she perceived Appellant favored the "in-crowd" by driving them on errands or to get coffee on base. During her testimony upon being recalled, SrA LI testified she witnessed Appellant giving a hand massage at work to one of the "in-crowd" members. SrA LI was the only witness to this behavior. SrA LI was the witness who reported the alleged unprofessional relationships to her first sergeant, which led to the initiation of the CWI investigation and eventual court-martial. SrA LI testified she was also not invited to drink with Appellant and the "in-crowd" around base.

Another member of the "out-crowd," SrA NP, testified that Appellant spent time with the "in-crowd" drinking off base at least twice where the entire office was not invited. However, SrA NP never felt excluded by Appellant and never felt uncomfortable at work when Appellant was in charge. SrA NP did feel that Appellant "laughed" more at work with the "in-crowd" than with her. SrA NP never felt Appellant was unfair and testified Appellant also nominated SrA NP for a work-related award.

RL and ST, members of the alleged "in-crowd," testified they occasionally saw Appellant in the bars around base, drinking with, among others, members of the "in-crowd." They also testified to facts regarding a trip to Seoul.

Several other witnesses testified about a trip to Seoul, planned for SrA NA's birthday and perhaps a trip where all members of the dining facility were invited.[13] However, when the time came, SSgt NA did not go to Seoul and only Appellant, the "in-crowd," and another non-dining facility noncommissioned officer traveled for the overnight trip. At the rental house in Seoul, Appellant had her own room, and two Airmen stayed in a different room. The noncommissioned officers shared another room. When the group arrived in Seoul, they went out for dinner and drinks, drank some alcohol at the rental house, then went out to another bar to drink—some people were dancing. As the night went on, Appellant returned to the rental house with two members of the Seoul trip group while others stayed out at the bar. Appellant stayed up and talked with one Airman from the "in-crowd" in the rental home for a bit upon their return from the bars. When everyone woke up the next morning, they all traveled back to Osan Air Base.

The Defense called five witnesses during their case-in-chief and offered 14 letters on behalf of Appellant attesting to her good military character. In closing argument, trial defense counsel pointed out, *inter alia*, that "[e]very single witness, the vast majority, *except [SrA LI,]* said that [Appellant] was professional, that she enhanced morale, unit cohesion, good order and discipline, and improved the operational environment." (Emphasis added).

## II. DISCUSSION

### A. Law

#### 1. R.C.M. 914

At the time of Appellant's trial, R.C.M. 914 stated, *inter alia*, that:

---

[13] Witnesses provided conflicting testimony as to whether everyone in the dining facility was invited to the Seoul trip. SrA LI testified she was not invited to the Seoul trip.

(a) *Motion for productio*n. After a witness other than the accused has testified on direct examination, the military judge, on motion of a party who did not call the witness, shall order the party who called the witness to produce, for examination and use by the moving party, any statement of the witness that relates to the subject matter concerning which the witness has testified, and that is:

(1) In the case of a witness called by trial counsel, in the possession of the United States . . . .

### 2. The Jencks Act

The language of R.C.M. 914, "tracks the language of the Jencks Act." *United States v. Palik*, 84 M.J. 284, 289 (C.A.A.F 2024) (quoting *United States v. Muwwakkil*, 74 M.J. 187, 190 (C.A.A.F. 2015)). Specifically, "[t]he Jencks Act requires a district court judge, upon motion by the defendant, to order the [G]overnment to disclose prior 'statement[s]' of its witnesses that are 'relate[d] to the subject matter' of their testimony after each witness testifies on direct examination." *Palik,* 84 M.J. at 289 (quoting 18 U.S.C. § 3500(b) (2018)). The United States Court of Appeals for the Armed Forces (CAAF) has "conclud[ed] that our Jencks Act case law and that of the [United States] Supreme Court informs our analysis of R.C.M. 914 issues." *Palik*, 84 M.J. at 290–91 (first alteration in original) (quoting *Muwwakkil*, 74 M.J. at 191).

The purpose of the Jencks Act "is to 'further the fair and just administration of criminal justice.' It is not to be parsed like a tax statute; and [the Government], whose responsibilities are not simply adversarial, has a duty to make frank and full disclosure . . . ." *United States v. Principe*, 499 F.2d 1135, 1139 (1st Cir. 1974) (quoting *Campbell v. United States*, 365 U.S. 85, 92 (1961)).

### 3. Timing of a R.C.M 914/Jencks Act Objection

Several persuasive federal court opinions address when an objection should be made under the Jencks Act. "It is beyond peradventure that [the Jencks Act] 'authorizes the [G]overnment to withhold the recorded statements of a prospective government witness until the witness completes his direct testimony.'" *United States v. Tribble*, 559 F. Supp. 3d 41, 44 (D.P.R. 2021) (footnote omitted) (quoting *United States v. Tejeda*, 974 F.2d 210, 217 (1st Cir. 1992) (citing *United States v. Kouri-Pérez*, 47 F. Supp. 2d 166, 173 (D.P.R. 1999) ("holding that 'it is abundantly clear that district judges may not compel pretrial disclosure of non-exculpatory *Jencks* materials *prior* to the conclusion of a witness' direct testimony") (emphasis added)).

"Absent a preexisting agreement with the [G]overnment concerning disclosure of witness statements, *see, e.g.*, *United States v. McKenzie*, 768 F.2d 602,

609 (5th Cir. 1985), a Jencks motion must be made after the relevant witness testifies on direct examination *and at a minimum before the close of evidence*." *United States v. Jonassen*, 759 F.3d 653, 663 (7th Cir. 2014) (emphasis added) (citing *United States v. Knapp*, 25 F.3d 451, 461 (7th Cir. 1994); and then citing *United States v. Carter*, 613 F.2d 256, 261 (10th Cir. 1979) ("holding that defendant failed to make a timely assertion of his rights under the Jencks Act when he requested the materials before trial, which was too early, and again after trial, which was too late, but not during trial after the relevant witness testified")), *cert. denied*, 577 U.S. 864 (2015).

Other United States federal circuit courts reached similar conclusions regarding the timing of Jencks Act objections. *See, e.g.*, *United States v. Span*, 970 F.2d. 573 (9th Cir. 1992) (where after a witness was subject to direct *and cross-examination*, defense made the court aware of Jencks Act material and the court ordered the material produced), *cert. denied*, 507 U.S. 921 (1993), *rev'd on other grounds*, 75 F.3d 1383 (9th Cir. 1996); *United States v. Faulkner,* 538 F. 2d 724 (6th Cir. 1976) (where the defense s*tarted cross-examination of a witness*, then requested Jencks Act material, the judge erred by denying this request, but the error was cured when the Government provided the defense with the required Jencks Act material later in the trial and the judge permitted the defense to conduct additional cross-examination of that witness).

### 4. Statutory Interpretation

"The construction of a statute is a question of law that we review *de novo*." *United States v. Kelly*, 77 M.J. 404, 406 (C.A.A.F. 2018) (citation omitted). The CAAF "appl[ies] ordinary rules of statutory construction in interpreting the R.C.M." *Muwwakkil*, 74 M.J. at 194.

"[I]n all statutory construction cases, we begin with the language of the statute." *United States v. McDonald*, 78 M.J. 376, 379 (C.A.A.F. 2019) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)). In the absence of a statutory definition, the plain language of a statute will control unless it is ambiguous or leads to an absurd result. *United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007) (citations omitted). "Whether the statutory language is ambiguous is determined 'by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *United States v. McPherson*, 73 M.J. 393, 395 (C.A.A.F. 2014) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Ambiguity should be resolved in favor of lenity. *United States v. Murphy*, 74 M.J. 302, 311 (C.A.A.F. 2015) (citing *Cleveland v. United States*, 531 U.S. 12, 25 (2000)) (additional citations omitted).

**5. R.C.M. 914 Violation Rulings**

R.C.M. 914(e) provides:

> *Remedy for failure to produce statement.* If the other party elects not to comply with an order to deliver a statement to the moving party, the military judge shall order that the testimony of the witness be disregarded by the trier of fact and that the trial proceed, or, if it is trial counsel who elects not to comply, shall declare a mistrial if required in the interest of justice.

The CAAF held that "[t]he plain text of R.C.M. 914 provides two remedies [striking the witnesses testimony or declaring a mistrial] for the [G]overnment's failure to deliver a 'statement' without referencing a predicate finding of prejudice to the accused." *Muwwakkil,* 74 M.J. at 194.

"The Jencks Act jurisprudence of the Supreme Court and [the CAAF] recognizes a judicially created 'good faith loss doctrine.'" *Palik*, 84 M.J. at 290 (quoting *Muwwakkil*, 74 M.J. at 193). "This doctrine excuses the Government's failure to produce 'statements' if the loss . . . of evidence was in good faith." *Id.* (omission in original) (quoting *Killian v. United State*s, 368 U.S. 231, 242 (1961)). However, the United States Court of Military Appeals, the CAAF's predecessor, observed that the "good faith loss doctrine" is "generally limited in its application." *Id.*

**6. Prejudice Analysis**

A R.C.M. 914 violation generally "will not rise to a constitutional error." *United States v. Sigrah*, 82 M.J. 463, 467 (C.A.A.F. 2022) (citing *United States v. Clark*, 79 M.J. 449, 454 (C.A.A.F. 2020)). "When there is a preserved non-constitutional error in the application of R.C.M. 914, we must determine if the error had a substantial influence on the findings." *Id.* (citing *Clark*, 79 M.J. at 455 (citation omitted)). "In conducting the prejudice analysis, this court weighs: (1) the strength of the [G]overnment's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Clark*, 79 M.J. at 455 (internal quotation marks and citations omitted).

In *Sigrah*, the CAAF applied the *Kohlbek*[14] framework and determined that the appellant was prejudiced by concluding:

> (1) that if the military judge had applied the correct remedy and stricken the testimonies of the victim, SPC D and SPC B, the government would have had a very weak case; (2) that without

---

[14] *United States v. Kohlbek*, 78 M.J. 326 (C.A.A.F. 2019).

these testimonies, Appellant would have had a strong case; (3) that the testimonies were material; and (4) that the testimonies were of high quality.

82 M.J. at 468. It further stated "had the testimony of the victim and SPCs D and B been struck at trial based on R.C.M. 914, there would have been no independently admissible evidence to prove [a]ppellant's guilt." *Id.*

## B. Analysis

Appellant argues that the military judge abused his discretion in his ruling related to SrA LI's pretrial statement and trial testimony because she did not "waive [the] right to have [SrA LI's statement] produced, so the initial testimony of SrA LI should have been stricken," or at a minimum, because the Defense objected prior to additional cross-examination, the recall testimony should have been stricken. Appellant follows that she was prejudiced by the military judge's ruling because SrA LI's testimony in court had a "substantial influence on the findings that led to Appellant's convictions."

The Government argues Appellant "waived the right to raise the motion when she failed to object at the conclusion of [SrA LI's] initial direct examination." The Government also argues that in the alternative, "Appellant was in possession of [SrA] LI's [pretrial] statement and therefore, R.C.M. 914 was not violated." Finally, the Government argues that if there was error, "error did not have a substantial impact on the findings."

### 1. Waiver

With respect to waiver, the Government asserts, relying on the "plain meaning" of the Rule, that "[t]o hold that after direct examination is not the timing requirement for a proper R.C.M. 914 motion, is contrary to the concepts of fairness, judicial economy, and logic." We do not agree.

The plain language of R.C.M. 914 states that the timing for this objection *begins* after direct examination of the witness in question. Where we diverge from the military judge and the Government is in our conclusion as to when this objection timing *ends*. We find the plain reading of the Rule to mean what it says—the objection timeline starts "after direct examination." This is consistent with the precedential history of the Jencks Act, and by extension, R.C.M. 914. *Palik*, 84 M.J. at 289. The "after direct examination" language reflects the function of the Jencks Act and R.C.M. 914—to require a party to disclose relevant pretrial statements of a witness after they have become a testifying witness. This requirement does not ripen unless and until the witness takes the stand and provides testimony. *See, e.g., Tribble*, 559 F. Supp. 3d at 44 ("It is beyond peradventure that [the Jencks Act] 'authorizes the [G]overnment to withhold the recorded statements of a prospective government witness

*until the witness completes his direct testimony*.'" (Emphasis added)). In fact, a judge has no authority to compel the Government to produce a statement *until* "after direct examination." *Id.* at 46. This timing trigger is reflected in the "after direct examination" language in the Rule. Still, we acknowledge the plain language of the Rule, without considering court interpretations of it, does not expressly explain when the moving parties' ability to object ends.

We hold the language "after direct examination" was not intended to extinguish the moving party's ability to object once any cross-examination is conducted. The Government, and military judge at trial, seem to read the words "after direct examination" as synonymous with the language "prior to cross-examination." We cannot, in the absence of authority for such a position, adopt such a narrow, and non-obvious, interpretation of those words, because, *inter alia*, this interpretation is constraining on the defense and is akin to "pars[ing] [the Jencks Act] like a tax statute." *Principe*, 499 F.2d at 1139. Given the Government "has a duty to make frank and full disclosure . . . ." *id.*, under the law, we will not read into the Rule constraints not present in the first place. This reading is consistent with several federal cases cited *supra. See, e.g.*, *Jonassen*, 759 F.3d at 663; *Knapp*, 25 F.3d at 461; *Span*, 970 F.2d. 573; M*cKenzie*, 768 F.2d 602 at 609; *Carter*, 613 F.2d at 261; *Faulkner,* 538 F.2d 724.

Concluding, as we do, that R.C.M. 914 allows some space to object beyond immediately after direct examination, when then does the ability to move to strike end? Of course, it would be unreasonable to presume a moving party had an indefinite window in which to move for production or file an objection under R.C.M. 914 or the Jencks Act. We conclude that such an objection is to be made during the trial. *See Jonassen*, 759 F.3d at 663. While it is ideal, perhaps, to make the objection prior to conducting cross-examination, so that one can conduct a thorough examination, one is not so required, nor does a later objection, intentional or otherwise, waive one's ability to object if the trial is still ongoing. Principles like fairness, logic, and judicial economy support having this objection be litigated at the trial level during trial—sometime after direct examination.

In fact, failing to object during trial at all, even if after cross-examination, could have resulted in ineffective representation by the Defense. *See, e.g.*, *Palik*, 84 M.J. at 291 ("[A]t the time of trial, there was tremendous upside and virtually no downside for the defense to file that R.C.M. 914 motion . . . . The defense was not required to choose between undermining the credibility of the government investigation on the one hand and filing an R.C.M. 914 motion on the other. The defense could have—and should have—taken both tacks."). Therefore, while it may not, in every circumstance, be best practice to wait as long to object as these defense counsel did, objecting later during trial is likely preferrable to not objecting at all.

In light of our review of the jurisprudence surrounding the Jencks Act, we find the military judge abused his discretion in finding Appellant waived the right to make a motion under R.C.M. 914 at trial related to SrA LI's testimony during the trial.

Absent waiver, the Government advances a new theory on the merits of the underlying R.C.M. 914 motion—that "Appellant was in possession of [SrA] LI's [pretrial] statement and therefore, R.C.M. 914 was not violated." Such a theory was not litigated at trial by either party. We decline to reach the merits of this argument, or any underlying R.C.M. 914 motion now on appeal because of the error by the military judge at trial. In precluding the Defense from objecting at trial, the factual record was not developed, and the military judge did not provide findings of fact or conclusions of law relevant to SrA LI's pretrial statement. Because this motion is one that should be litigated at trial to build an appellate record, and because the military judge erroneously did not allow the Defense to so litigate it, we are unwilling to complete further analysis of this merits motion, if any, including the Government's novel theory on appeal that "Appellant was in possession of [SrA] LI's [pretrial] statement."

### 2. Prejudice

Case law prescribes a prejudice test when there was an error at the trial level related to a military judge's ruling on R.C.M. 914. That test asks us to review "(1) the strength of the [G]overnment's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question" to determine if the "error had a substantial influence on the findings." *Sigrah*, 82 M.J. at 467; *Clark*, 79 M.J. at 455. Such a test, however, is not precisely able to assess error with which we have been presented because the military judge precluded the Defense from raising this objection at trial, and therefore inhibited their ability to attempt to carry their burden of proof on this motion with respect to SrA LI.

Still, we take a step back to ask ourselves if the military judge's abuse of discretion in finding waiver of the Defense' R.C.M. 914 objection "had a substantial influence on the findings." *Sigrah* 82 M.J. at 467. We find it did. The other R.C.M. 914 motions litigated at Appellant's trial were meritorious, resulting in the exclusion of three government witnesses' testimony. While we express no opinion on the R.C.M. 914 rulings related to SSgt NA, SrA JE, and SrA TM, or the potential ruling related to SrA LI, we do note that there is significant overlap in the underlying facts related to those meritorious motions and the more limited facts we have related to SrA LI. Given those overlapping facts, and government concessions at trial related to the missing pretrial witness statements, we conclude that the Defense was prejudiced by not being allowed to advance at trial a non-frivolous objection related to SrA LI's

testimony and her lost signed pretrial statement. This prejudice alone had a "substantial influence on the findings." *Sigrah* 82 M.J. at 467.

In the alternative, should we apply the *Clark* analysis in this case, we still find the exclusion of SrA LI's statement would have had a "substantial influence on the findings." *Sigrah* 82 M.J. at 467.[15] The Government argues we should find no prejudice because "[t]he evidence provided by other witnesses established that Appellant was frequently seen out with the same core group of subordinates in the [off base] drinking at bars" and "[i]t was undisputed that Appellant went on a trip to Seoul with this same group of subordinates, which culminated in one of those subordinates, IS, getting so intoxicated that Appellant had to carry her home." The Government also offers evidence from a witness of an unsubstantiated rumor about Appellant they argue is the "most damning" evidence against Appellant. Even considering these facts, we are not convinced of the strength of the Government's remaining case.

SrA LI's testimony was of a sound quality and material to understanding Appellant's behavior at work, Appellant's treatment of her subordinates on duty, and the impact of Appellant's off-duty behavior within the unit.[16] SrA LI testified to her own personal impressions and impact of the "in-crowd" perceptions while on duty, and also was the only witness to Appellant massaging one of the "in-crowd" members during work hours. In light of the evidence presented by the Defense, including but not limited to strong good military character evidence, we determine that the exclusion of SrA LI's testimony may have tipped the scales in favor of Appellant related to the merits of the specifications of which she was convicted. Similar to *Sigrah*, we find (1) that if the military judge had stricken the testimony of SrA LI the Government would have had a weak case; (2) that without this testimony, Appellant would have had a strong case; (3) that the testimony of SrA LI was material; and (4) that the testimony was of high quality. *Sigrah*, 82 M.J. at 468. We therefore conclude the ruling of the military judge to waive Appellant's objection to SrA LI's statement prejudiced Appellant.

---

[15] This assumes without deciding SrA LI's testimony would be stricken from consideration in findings.

[16] Such a review of the merits of the case are further complicated given Appellant's other raised issue related to the *Walters* challenge in the military judge's findings relating to issue (1). However, we need not reach that issue to resolve the prejudice in this case as we can assume away the *Walters* issue and still find a weak government case.

## III. CONCLUSION

The findings of guilty and the sentence are **SET ASIDE**. A rehearing is authorized. The record is returned to The Judge Advocate General of the Air Force for furthering proceedings consistent with this opinion.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court